**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

WILLIAM EUGENE LANGLEY
ADC #110272                                                                                    PETITIONER

VS.                                        5:03CV00371 JLH/JTR

LARRY NORRIS, Director,
Arkansas Department of Correction                                              RESPONDENT

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge J. Leon

Holmes.  Any party may serve and file written objections to this recommendation.  Objections should

be specific and should include the factual or legal basis for the objection.  If the objection is to a

factual finding, specifically identify that finding and the evidence that supports your objection.  An

original and one copy of your objections must be received in the office of the United States District

Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy

will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the

right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the United States District Judge,

you must, at the same time that you file your written objections, include a "Statement of Necessity"

that sets forth the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.  An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## I.  Introduction

On October 2, 2003, Petitioner initiated this action by filing a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  (Docket entry #2.)  After carefully considering each of Petitioner's arguments, the Court concludes that the Petition should be denied and that the case should be dismissed, with prejudice.

## II.  Background

On April 14, 1997, a Crawford County jury convicted Petitioner of kidnaping, first-degree battery, and first-degree terroristic threatening for holding his girlfriend hostage and beating her.  He is currently serving 360 months in the Arkansas Department of Corrections pursuant to concurrent sentences.

After his conviction, Petitioner appealed to the Arkansas Court of Appeals.  *Langley v. State*, 1998 WL 170172 (Ark. Ct. App. 1998) ("*Langley I*").  The Arkansas Court of Appeals rejected

several of Petitioner's arguments on the merits, declined to reach a number of his other arguments because they were not raised with the trial court, and affirmed his conviction. *Id.* at *1-2.

Petitioner next pursued post-conviction relief with the trial court, which denied his Rule 37 petition. On appeal, the Arkansas Supreme Court reversed and remanded because the trial court, in denying Petitioner's Rule 37 petition, had failed to conduct a hearing and make specific written findings in support of its decision. *Langley v. State*, 2000 WL 246265 (Ark. 2000) (*per curiam*) (*"Langley II"*).

On remand, the trial court again denied Petitioner's Rule 37 petition. *See* docket entry #5, Exs. E and 4. In his subsequent appeal to the Arkansas Supreme Court, Petitioner argued that: (1) he was denied effective assistance of counsel because his attorney failed to investigate or procure witnesses to support Petitioner's defense that he lacked a culpable *mens rea*; and (2) he was denied an impartial jury because a juror was a friend of the victim's family. (Docket entry # 5, Ex. 5 at p. 142-51.) The Court rejected both of Petitioner's arguments and affirmed the trial court's denial of his Rule 37 petition. *Langley v. State*, 2002 WL 31207455 (Ark. 2002) (*per curiam*) ("*Langley III*").

On August 23, 1999, while the *Langley II* appeal was pending, Petitioner filed a habeas action in United States District Court for the Eastern District of Arkansas. *Langley v. Norris*, E.D. Ark. No. 5:99-CV-316 GH/JWC, docket entry #2. Petitioner later dismissed that habeas action, without prejudice, in order to exhaust his state court remedies in the *Langley III* appeal. *Id.* at docket entries #15 and #16.

On October 2, 2003, after exhausting his state court remedies, Petitioner filed this habeas action. (Docket entry #2.) Liberally construing Petitioner's habeas pleadings, he argues that his trial counsel was ineffective because: (1) he failed to request a mental competency hearing prior to trial;

(2) he failed to investigate and procure witnesses that would have supported Petitioner's diminished capacity defense; and (3) he failed to raise an erroneous jury instruction in Petitioner's direct appeal in *Langley I*. *See* docket entries #2 and #9. The Court will analyze each of the three aspects of Petitioner's ineffective assistance of counsel argument separately.[1]

### III. Analysis.

**A.     Ineffective Assistance of Counsel - Failure to Request a Competency Hearing**

First, Petitioner contends that his counsel was ineffective because he failed to request a mental competency hearing prior to trial. Before reaching the merits of this argument, it is important to understand the way in which Petitioner's mental competency was dealt with before the trial court.

On June 5, 1996, Petitioner's attorney filed a motion requesting a psychiatric examination to determine if Petitioner could assist in his defense and appreciate the criminality of his conduct. (Tr. 5-6.) On June 5 and June 12, 1996, the trial court entered orders granting that motion and providing that Petitioner receive a psychiatric examination at the Western Arkansas Counseling and Guidance Center. (Tr. 7-10.)

In a letter dated July 23, 1996, Dr. Clayton Mitchell, a clinical psychologist with the Western Arkansas Counseling and Guidance Center, reported the findings of his examination to the trial court. Dr. Mitchell deferred making a diagnosis, but, relying primarily on subjective information

---

[1]   Respondent did not submit the record of the lower court proceedings (the appellate transcript in *Langley I*) as an exhibit in this case. However, Respondent did so in Petitioner's prior habeas case. *See Langley v. Norris*, E.D. Ark. No. 5:99-CV-316 GH/JWC at docket entry #12. This transcript contains, among other things, Petitioner's pre-trial motions, the reports of his mental evaluations, and the trial testimony.

In a separate Order (docket entry #11), the Court has directed the Clerk of Court to make this transcript a part of the record in this case. The Court will cite to the page numbers of this transcript as "(Tr.)."

provided by Petitioner, he gave the trial court the following assessment:

> [Petitioner] appears to be aware of the nature of the charges and the proceedings
> against him. [Petitioner] reported a variety of cognitive defects that may impede his
> capacity to cooperate effectively with an attorney in the preparation of his defense.
> [Petitioner] is capable of conforming his behavior to that which is required in Court
> if he so chooses, and is aware of the potential penalties if he does not.
>
> [Petitioner] reported problems with memory that impede assessment of responsibility
> issues.  There is insufficient data to address responsibility issues at this time.

(Tr.  14-15.)

Based on Dr. Mitchell's assessment, Petitioner's attorney moved to obtain a psychiatric

examination from the Arkansas State Hospital.  (Tr. 11-12.)  On July 30, August 9, and December 4,

1996, the trial court entered orders providing that Petitioner receive a psychiatric examination at the

Arkansas State Hospital.  (Tr.16-19, 26-27.)

On January 2, 1997, Dr. Susan Doi, a forensic staff psychologist at the Arkansas State

Hospital, submitted a forensic evaluation to the trial court detailing the results of Petitioner's

examination and diagnosis. (Tr. 41.)  Dr. Doi's report reflects that multiple clinical interviews were

conducted with Petitioner and that a battery of psychological tests were administered to him.  (Tr.

41.)

In her clinical evaluation of Petitioner, Dr. Doi specifically addresses Dr. Mitchell's earlier

report:

> The findings from this evaluation offer no evidence to indicate [Petitioner] has a
> major mental disorder.  His reported brain lesion is acknowledged as a physical
> condition having no bearing on his mental status.  It is noted Dr. Mitchell, in his
> previous evaluation of [Petitioner], did raise a question regarding his concern about
> [Petitioner's] reported "cognitive deficits" and "memory problems."  There are no
> data, however, other than [Petitioner's] subjective report, suggestive he has a
> cognitive or memory deficit of any clinical significance.  His functioning on the unit
> is fine.  He requires no supervision or special assistance in managing his needs or

external demands.  He understands the routine and what is expected of him.  At no time does he appear lost, confused, or upset.  He maintains lengthy conversations, successfully and appropriately referring to, or incorporating, topics or information addressed minutes, or even days, before.  He recollects, in detail, the circumstances surrounding his belated arrest (i.e. meeting the victim at the park in Van Buren) Thus, given the discrepancies between objective and subjective data, it does appear [Petitioner's] reported memory loss for the alleged crime is selective and self-serving.  It is conceivable he is offering this complaint in an attempt to attenuate the possible ramifications of criminal prosecution.  Similarly, [Petitioner's] unsolicited report of bad memories involving the motor vehicle accident of 1979 is not of clinical concern.  By his failure to exhibit critical symptoms consistent with a psychiatric disturbance, this complaint appears self-serving as well.  In particular, as [Petitioner] relates details of the traumatic event, he displays a marked absence of anxiety.  Regardless, even if he were to meet criteria for an anxiety disorder, such a diagnosis would be completely irrelevant to the issues of fitness to proceed or mental state at the time of the crime.

(Tr. 45-46.)

The team at the Arkansas State Hospital assessed Petitioner's mental condition as abuse of amphetamine, alcohol, and cannabis, along DSM-IV Axis I, and personality disorder, not otherwise specified, along Axis II.  (Tr. 46.)  In the report, Dr. Doi expressed the following opinion regarding Petitioner's ability to assist counsel, understand and participate in the legal proceedings, and understand and appreciate the criminal nature of his behavior:

[Petitioner] is able to understand rationally and factually the legal proceedings against him and assist effectively in the preparation of his defense.  Although he claims to have no memory for the event, his reported memory loss is more than likely selective and not attributable to a mental disorder.  In any case, [Petitioner] is capable of learning and comprehending what he is told, therefore, there is nothing to prevent him from reconstructing the event, if he should so choose, given sufficient information from other sources.  Thus, the opinion is [Petitioner] is competent to stand trial.

Concerning the issue of criminal responsibility, there are no findings to indicate [Petitioner's] mental condition was incapacitated at the time the crimes allegedly occurred.  The nature of the allegations and information in police reports suggest the criminal activity resulted from purposeful and goal-directed behavior.  It does appear the defendant was abusing amphetamine just prior to the alleged event.  Voluntary

substance intoxication, however, is not considered an affirmative defense in the State
of Arkansas. Given [Petitioner] does not have a primary mental disorder, there are
no aspects of his mental functioning which would have prevented him from
appreciating the criminality of his conduct, conforming his behavior to the
requirements of the law, and forming the culpable mental state. Thus, the opinion
is [Petitioner] was responsible for his behavior, and did posses mental culpability at
the time of the alleged crime.

(Tr. 46-47.) After Dr. Doi submitted her forensic report on Petitioner, there is nothing in the record
indicating that his attorney ever requested a competency hearing or otherwise raised the issue of
Petitioner's competency.

Petitioner was the only defense witness called at trial. He testified that he and the victim
were taking methamphetamine at the time of the alleged crime and that they were "wasted on drugs."
(Tr. 286.) On cross-examination, Petitioner generally acknowledged responsibility for beating the
victim, but his recollection was sporadic regarding specific events. Petitioner essentially testified
that he did not remember what he did that night. (Tr. 291-92.) When asked why he could not
remember, Petitioner testified that "for one reason, I have problems, to start with, in my mind from
a car accident I had. And then another reason is from drugs. And [the victim] knows as well as I
know, that stuff messed me up so bad I couldn't even remember anything. That's why I asked for
help to get off the stuff." (Tr. 292-93.)

In rebuttal, the State called Dr. Doi, who testified that Petitioner was at the state hospital for
approximately three weeks, where he was interviewed several times by each member of the
evaluation team and observed by the nursing staff 24 hours a day. (Tr. 309.) According to Dr. Doi,
Petitioner's ability to recall previous conversations with staff members and the detailed

circumstances of his arrest was inconsistent with someone who had severe memory problems.[2]  (Tr. 310-11.)  Dr. Doi further testified that, other than Petitioner's self-serving subjective complaints, no observations or behavior suggested that he had a mental disorder or memory problem, and that she found him competent to stand trial.  (Tr. 311-12.)

In responding to Petitioner's argument that his attorney "should have had a competency hearing prior to the trial" (*see* docket entry # 5 at p. 5), Respondent asserts only that the Arkansas Supreme Court properly disposed of that claim in *Langley III.*  Surprisingly, Respondent does not address the merits of this argument and fails to raise the defense of procedural default.

In *Langley III*, the Court *did not* consider whether Petitioner's attorney should have requested a competency hearing.  Rather, the Court only addressed the issue of whether Petitioner's counsel was ineffective "for failing to investigate or procure the testimony of witnesses related to [Petitioner's] lack of a *mens rea.*"  *Langley III*,  2002 WL 31207455 at *1.  Thus, Respondent has erroneously lumped together two distinct issues: (1) Petitioner's competency to stand trial; and (2) his mental culpability at the time of the crime.  In Petitioner's Rule 37 proceedings, the latter issue was raised and disposed of, but not the former.[3]

---

[2]  In her report, Dr. Doi noted that, in 1990, Petitioner was treated for a brain lesion which appeared to be the result of a stroke.  (Tr. 42.)  The lesion caused Petitioner to have vision problems.  *Id.*

In her trial testimony, Dr. Doi acknowledged the existence of this cyst or lesion on Plaintiff's brain; however, her testimony was cut short by defense counsel's objection to this continued line of testimony.  The trial court sustained the objection. (Tr. 310.)

[3]  The state trial court, in ruling on Petitioner's Rule 37 petitions, never considered the issue of whether his trial counsel should have requested a pre-trial mental competency hearing.  The trial court's orders disposing of the Petitioner's two Rule 37 motions reflect that Petitioner argued that counsel was ineffective in: (1) failing to obtain a clear ruling on a mistrial motion based on contradictory and confusing jury instructions; (2) failing to instruct the jury regarding punishment range for the crimes charged; (3) failing to object to the trial court's miscalculation of Petitioner's

In *Vogt v. United States*, 88 F.3d 587, 590 (8th Cir. 1996), the Court held that a habeas petitioner may *not* procedurally default an argument that counsel was ineffective in failing to request a competency hearing. In that case, a federal prisoner sought habeas relief claiming that he was incompetent to stand trial and that his trial counsel was ineffective in failing to request a competency hearing prior to trial. The Court rejected the respondent's claim that the petitioner had procedurally defaulted the issue by failing to raise it at the trial court level or on direct appeal: "the procedural default rule . . . does not operate to preclude a defendant who failed to request a competency hearing at trial or pursue a claim of incompetency on direct appeal from contesting his [or her] competency to stand trial and be sentenced through post-conviction proceedings." *Id.* at 590 (quoting *Adams v. Wainwright*, 764 F.2d 1356, 1359 (11th Cir.1985), *cert. denied*, 474 U.S. 1073 (1986)). *See also Ryan v. Clarke*, 387 F.3d 785, 791 (8th Cir. 2004) (*Vogt* holding is based on the rationale "that a defendant who is truly incompetent does not have the ability to knowingly or intelligently waive his right to have the competency issue determined at trial.")[4]  Thus, even though Petitioner may have

───────────────

felony convictions under the habitual offender statute; (4) failing to object when the Court asked Petitioner whether he understood that prior felonies could enhance his sentence; (5) failing to object to the application of Ark. Code Ann. § 16-97-103(1) as an unconstitutional deprivation of due process; (6) failing to call certain witnesses requested by Petitioner; (7) failing to prepare for trial, spending less than thirty minutes in preparation; (8) failing to call as witnesses the psychiatrist or physicians who examined him in support of an insanity defense; (9) failing to call any witnesses requested by Petitioner in support of a diminished capacity insanity defense; (10) failing to inform Petitioner of any plea offer from the State; and (11) failing to strike a juror as requested by Petitioner. *See* docket entry #5, Exs. E and 4.

In his appeal of the denial of those Rule 37 petitions to the Arkansas Supreme Court, Petitioner, who was represented by counsel, did not raise the issue of his trial counsel's failure to request a pretrial mental competency hearing. *See* docket entry #5, Ex. 5.

[4] At least one lower court in the Eighth Circuit has characterized *Vogt* as an "aberration" and cited other Eighth Circuit precedent applying the procedural default rule to competency claims. *Ryan v. Kennedy*, 125 F. Supp.2d 1149, 1150-51 (D. Neb. 2000) (citing *Weekley v. Jones*, 76 F.3d 1459 (8th Cir. 1996) (*en banc*), *cert. denied*, 519 U.S. 908 (1996)).

procedurally defaulted this claim, the Court will proceed to the merits of Petitioner's first ineffective

assistance of counsel argument.

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, Petitioner

must show: (1) that his counsel's assistance fell below an objective standard of reasonable care; and

(2) that he suffered actual prejudice as a result of counsel's deficiencies. *Strickland v. Washington*,

466 U.S. 668, 687 (1984).   Under the *Strickland* standard, an attorney's failure to request a

competency hearing is objectively unreasonable if evidence raised "substantial doubt" about his

client's ability to stand trial. *Ford v. Bowersox*, 256 F.3d 783, 786 (8th Cir. 2001), *cert. denied*, 534

U.S. 1068 (2001) (citing  *Drope v. Missouri*, 420 U.S. 162, 181 (1975)).   The ultimate question is

whether a petitioner had "'sufficient present ability to consult with his lawyer with a reasonable

degree of rational understanding . . . [and] a rational as well as factual understanding of the

proceedings against him.'" *Ford*, 256 F.3d at 786 (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 354

(1996)). While no fixed signs create sufficient doubt about competence, pretrial behavior, demeanor

during trial, and previous medical opinions regarding competency are relevant considerations. *Ford*,

256 F.3d at 786 (citing *Drope*, 420 U.S. at 180).

Petitioner contends that there is a conflict in the record between his State Hospital evaluation,

which found him competent to stand trial, and the evaluation of Dr. Mitchell, who stated that

Petitioner reported a variety of cognitive defects that may have hindered his ability to cooperate with

counsel in preparing his defense. *See* docket entries #2 and #9.   Petitioner also highlights the State

Hospital's observation that medical records demonstrated he had "past neurological cysts," but no

memory defects. *Id*

After carefully reviewing the record, the Court cannot say that trial counsel's failure to

request a competency hearing was objectively unreasonable.  Dr. Mitchell, in his report, simply

related  Petitioner's own subjective complaints that he suffered from cognitive deficits that "may

impede" his ability to effectively cooperate with defense counsel.   Dr. Doi, in her report,

acknowledged Petitioner's subjective complaints but stated that all of the objective data, including

interviews, observations, and testing of Petitioner, revealed no evidence of a mental disorder or

memory deficit, other than Petitioner's subjective, self-serving accounts.   Thus, there is no conflict

between the two reports.  Furthermore, there is no evidence whatsoever that Petitioner, at any time

in the proceedings leading up to trial, suffered from any lack of capacity that impaired his ability to

assist trial counsel in his defense.  Accordingly, the Court concludes that Petitioner's arguments fail

to create "substantial doubt" about his ability to stand trial.

**B.     Ineffective Assistance of Counsel - Failure to Investigate and Develop Diminished Capacity or Insanity Defense**

Second, Petitioner argues that his trial counsel failed to adequately investigate and procure

witnesses' testimony in support of his "diminished capacity" or "insanity" defense, both in the guilt

phase and during sentencing.  (Docket entry #2, p.4.)  Specifically, Petitioner argues that his attorney

should have investigated and obtained witnesses at trial, namely family members and "at the very

least Dr. Mitchell," to support his defense.  (Docket entry #2, p.5.)

In denying his Rule 37 Petition, the Court specifically considered and rejected this argument.

*See Langley III*, 2002 WL 31207455 at *1-3.  In doing so, the Court properly identified the legal

issues and discussed the relevant case law that lead it to conclude the argument was without merit.

Where a state court correctly identifies the governing legal principle raised by a Petitioner

seeking post-conviction relief, a federal court may grant a writ of habeas corpus only if the state

court adjudication "involved an unreasonable application of clearly established Federal law, as

determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1).  The focus of

this inquiry is "whether the state court's application of clearly established federal law is objectively

unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535

U.S. 685, 694 (2002).

In upholding the trial court's denial of Rule 37 relief, the Arkansas Supreme Court cited its

decisions applying the *Strickland* standard and concluded that:

> All references in the record to [Petitioner's] diminished capacity came from
> [Petitioner]. No witness, other than [Petitioner], was presented to support his claim
> nor did he present any document or exhibit substantiating the claim. Because the
> decision to call witnesses is a matter of trial strategy and because [Petitioner] has
> failed to show any prejudice resulting from counsel's alleged failure to call such
> witnesses, his claim of ineffectiveness fails.

*Langley III*, 2002 WL 31207455 at *3.[5]

Petitioner has failed to meet his heavy burden of demonstrating that trial counsel's

representation fell below an objective standard of reasonableness, or that there is a reasonable

probability that the result of the proceeding would have been different but for counsel's alleged error.

*See Strickland*, 466 U.S. at 688, 694.  While Petitioner cites a number of legal decisions to support

his argument, all of those cases are distinguishable, and at least involved some evidence that the

defendant lacked the requisite *mens rea* to commit the charged offense. *See e.g., Profitt v. Waldron*,

---

[5]While Petitioner contended that trial counsel was ineffective for failing to call witnesses to
support his diminished capacity or insanity defense, he identified only two people that would "testify
to a bunch of stuff that was said on the stand that was not true." *Id.*  During his Rule 37 hearing,
Petitioner failed to call either of these two alleged witnesses. *Id.*  Similarly, although he also
identified an unnamed emergency room physician, who allegedly would have testified that drugs in
Petitioner's system would have prevented him from possessing the requisite *mens rea*, Petitioner
failed to produce that witness to testify at his Rule 37 hearing. *Id.*

831 F.2d 1245, 1249 (5th Cir. 1987) (defense counsel knew that defendant had escaped from a mental institution and had been adjudicated "insane" in another jurisdiction); *Walker v. Mitchell*, 587 F. Supp. 1432, 1440 (E.D. Va. 1984) (defendant had previously avoided a murder conviction on insanity grounds and had been committed to a mental hospital afterwards).

In *Langley III*, the Court held that Petitioner failed to present any evidence, other than his own self-serving statements, to support his claim that counsel was ineffective for failing to call witnesses to support a diminished-capacity or insanity defense. *Langley III*, 2002 WL 31207455 at *3. Suffice it to say, in his habeas Petition and Reply, Petitioner has not come forward with clear and convincing evidence to rebut the correctness of that holding. *See* 28 U.S.C. § 2254(e)(1).

Thus, the Court concludes that the Arkansas Supreme Court's application of the *Strickland* standard to the facts of Petitioner's case was not unreasonable. Accordingly, Petitioner's habeas claim that counsel was ineffective in failing to investigate or procure witnesses to support a diminished capacity or insanity defense should be denied.

**C.    Ineffective Assistance of Counsel - Failure to Argue Jury Instruction Error on Direct Appeal**

Finally, Petitioner claims that counsel was ineffective in failing to raise an argument on direct appeal concerning the trial court's jury instruction on the offense of "kidnapping." Petitioner was charged and ultimately convicted of Class Y felony kidnapping. Under Arkansas law, kidnapping is a Class Y felony, except if the defendant proves by a preponderance of the evidence that he or an accomplice voluntarily released the victim alive and in a safe place prior to trial, thereby reducing the offense to a Class B felony. *See* Ark. Code Ann. § 5-11-102(b). The Arkansas Supreme Court has explained that the latter exception is *not* a lesser-included offense of Class Y felony kidnaping,

and the statute reflects only a decreased penalty if the conditions for applying the exception are met.

*See Woods v. State*, 302 Ark. 512, 514, 790 S.W.2d 892, 893 (1990).

Even though Petitioner failed to introduce any evidence that he had "safely released the victim" after the kidnaping, his attorney objected to the submission of a jury instruction on Class Y kidnaping, and requested a jury instruction on Class B kidnaping, which the trial court denied.[6] Petitioner now argues that his trial counsel was ineffective because he failed to raise this issue in Petitioner's direct appeal in *Langley I*. *See* docket entry #2 at p.14.

Respondent contends that Petitioner has procedurally defaulted this argument because he failed to raise it in his Rule 37 proceedings in state court. *See* docket entry #5 at p. 9-11.  Neither the state trial court's orders nor the Arkansas Supreme Court decision disposing of Petitioner's Rule 37 claims contains any mention of any claim concerning ineffective assistance of counsel arising form the kidnaping jury instruction. *See* docket entry #5, Exs. E and 4-5; *Langley v. State*, 2002 WL 31207455 (Ark. 2002) (*per curiam*) ("*Langley III*").  Thus, because the state courts were deprived of any opportunity to review this ineffective assistance of counsel argument, Petitioner has procedurally defaulted that claim. *See Weeks v. Bowersox*, 119 F.3d 1342, 1350 (8th Cir. 1997) (before a federal court may consider a constitutional argument raised in a habeas petition, the issue must have been presented to the highest state court in a timely and procedurally correct manner).

In his Reply, Petitioner argues that his default should be excused because he is "actually innocent" of Class Y felony kidnaping, and that he is guilty of only the "lesser-included" Class B felony kidnaping.  In *Schlup v. Delo*, 513 U.S. 298 (1995), the Court held that a habeas petitioner

---

[6]During the trial, the victim unequivocally testified that she escaped from Petitioner.  (Tr. 206.)

may proceed, despite procedural default, where he can establish a "gateway claim of actual innocence." However, the Eighth Circuit has made it clear that the "actual innocence" exception requires the petitioner to come forward "with new reliable evidence that was not available at trial, and he must show that 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Nance v. Norris*, 392 F.3d 284 (8th Cir. 2004) (quoting *Schlup*, 513 U.S. at 327).

Petitioner has presented no new reliable evidence to support his invocation of the actual innocence exception to the procedural default rule. Thus, under the procedural default rule, the Court concludes that Petitioner is now barred from raising that claim.

Alternatively, Petitioner argues that, due to his alleged mental incompetence, his procedural default should be excused. Under the narrow "cause and prejudice" exception, a federal court may still proceed to the merits of a procedurally defaulted habeas claim if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *See Wyldes v. Hundley*, 69 F.3d 247, 253 (8th Cir. 1995) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("[I]n order for mental illness to constitute cause and prejudice to excuse procedural default, there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief"). *Holt v. Bowersox*, 191 F.3d 970, 974-75 (8th Cir. 1999) (holding that district court erred in applying procedural bar where the only evidence before the district court regarding habeas petitioner's mental state during the relevant time period showed that petitioner lacked the capacity to appreciate his situation and make rational decision).

Petitioner points to no evidence in this record to suggest that he could not appreciate and make rational decisions about his case during the time he had to pursue post-conviction relief. Petitioner filed two Rule 37 petitions for post-conviction relief in state court, wherein he enumerated numerous grounds for relief. *See* docket entry #5, exs. E and 4. Petitioner was represented by counsel in his Rule 37 hearing and on the appeal from the denial of post-conviction relief. At no time during his state-court post-conviction proceedings did Petitioner ever allege that counsel was ineffective for failing to argue the Class B felony kidnapping jury instruction on direct appeal. Under these circumstances, the Court concludes that Petitioner has procedurally defaulted this claim and has failed to satisfy the cause and prejudice exception.

### IV.  Conclusion

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (docket entry #2) be DENIED, and that this case be DISMISSED WITH PREJUDICE.

Dated this 2nd day of December, 2005.

_____
UNITED STATES MAGISTRATE JUDGE